J-S21042-26                    2026 PA Super 180

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CARL ERIC GOULD | : | |
| | : | |
| Appellant | : | No. 1685 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 6, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003256-2023

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    **FILED: AUGUST 10, 2026**

Carl Gould appeals from the judgment of sentence imposing two-and-a-half to five years' incarceration, after a jury convicted him of possessing crack cocaine with intent to deliver.[1]  He contends the suppression court erroneously denied his motion to suppress the evidence.  Because a Pennsylvania State Trooper smelled cannabis in Gould's vehicle and Gould had no right to possess or use cannabis, the magisterial district court permissibly issued a search warrant for Gould's vehicle.  Thus, we affirm.

On April 18, 2024, Gould drove a rental car through Dauphin County on Pennsylvania Route 283, a known drug-trafficking route between the cities of Harrisburg and Lancaster.  *See* N.T., 4/25/24, at 7-8.  Proceeding eastbound on the divided highway, Gould stayed in the passing lane for an extended period.  A Pennsylvania State Trooper stopped him for failing to keep his car

---

[1] *See* 35 P.S. § 780—113(a)(30).

in the righthand lane.[2]  A dashboard camera on the trooper's patrol car recorded the traffic stop.  *See* Commonwealth's Ex. 1 at 1:00-1:55.

As the trooper approached Gould's vehicle, Gould stuck his empty hands out the driver's side window.  *See id.* at 2:47-2:52.  The trooper interpreted this gesture as indicating consciousness of guilt and a surrender, as if Gould were offering his hands for cuffing.  *See* N.T., 4/25/24, at 8.  The trooper walked to Gould's passenger-side window and immediately smelled the aroma of cannabis wafting from inside.  *See id.* at 10-11.  He asked Gould where he was going.  Gould said he was headed to Lancaster to visit a woman he met online.  *See* Commonwealth's Ex. 1 at 4:15-4:40.

The trooper returned to his vehicle and ran Gould's information through the in-patrol-car computer.  He learned that Gould was a repeat offender for drug dealing.  A few minutes later, the trooper returned to the passenger's side window of Gould's rental car.  He asked, "Do you have a Medical Marijuana Card, at all?  The reason I ask is [be]cause there's a little bit of an odor of marijuana in the car.  That's why I'm asking."  *Id.* at 10:25-10:33.

Gould said, "I had a person in the car; he was smoking in the car."  *Id.* at 10:34-10:39. Gould then admitted that he did not have a Medical Marijuana Card.  Due to this development, the trooper directed Gould to exit the vehicle.  *See id.* at 10:56-11:02.  Gould got out, met the trooper in front of the patrol vehicle, and reiterated that he did not have a Medical Marijuana Card.  *See*

---

[2] *See* 75 Pa.C.S.A. § 3313(d).

*id.* at 11:14-11:16. The trooper said that, because Gould's rental car smelled of cannabis, and because Gould did not have a Medical Marijuana Card, "I wouldn't be doing my job if I didn't ask to search your car." *Id.* at 11:31-11:34. The trooper requested consent to search Gould's car.

Gould replied, "No." *Id.* at 11:59.

The trooper answered, "If you say, 'No,' that's your right; I'll explain it to you. Okay? If you refuse the search, . . . I'm gonna tow your car back to get a search warrant. Okay? At that point, if it's granted, I'll search the car." *Id.* at 12:00-12:12.

Gould still denied his consent to search the rental car. He then changed his story regarding where he was headed. Now, Gould contended that he had to get to Lancaster, because "I got therapy at one o'clock." *Id.* at 12:30.

They then discussed what Gould would do while the police were towing the rental car and obtaining the search warrant. The trooper informed him that the State Police would take him to a gas station, where he could have a friend or family member get him.

Gould asked to take his belongings from the car, and the trooper explained that everything had to remain in the rental vehicle until after the tow and possible search. Gould also wanted to take his two phones from the vehicle, which the trooper refused. The trooper again asked if Gould was still denying consent to search the rental car, and Gould said, "Get the tow truck. This is b.s. I didn't do anything wrong." *Id.* at 16:01-16:06.

The trooper radioed headquarters to send a tow truck to seize Gould's vehicle. *See id.* at 16:17-16:20. Twenty-six minutes later, the tow truck arrived and took Gould's rental car. *See id.* at 42:20.

Next, the trooper applied for a search warrant in the magisterial district court. In his sworn affidavit of probable cause, the trooper, after reciting his training and experience in drug investigations, deposed as follows:

> On 04/18/23, I was on patrol working a 0600 to 1400 hour shift, utilizing a marked Pennsylvania State Police SUV H1-28 . . .
>
> At approximately 1103 hours, I was traveling East on PA [Route] 283, when I observed a Gold Chevrolet Malibu bearing Pennsylvania registration KSW0384, traveling in front of my patrol vehicle. I observed the vehicle traveling in the left lane while the right lane was available . . . I conducted a query of the registration, and it was found to be a Hertz Rental vehicle.
>
> At approximately 1105 hours, I activated my emergency lights and sirens to conduct a traffic stop on the above vehicle . . . The operator stuck his hands up out of the driver's side window, which is abnormal. I approached the vehicle from the passenger's side, introduced myself, and advised the operator of the reason for the stop. The operator provided me his Pennsylvania Driver's License, which identified him as Carl Gould. While speaking with Gould, there was an odor of marijuana emanating from the vehicle. I returned to my vehicle and conducted a query of Gould's criminal history, which indicated he has been convicted for Possession With Intent To Deliver on ten (10) separate occasions. I messaged a backup unit to come to my stop to assist. Further, I noticed Gould was queried by Bethlehem PSP on 01/17/23.
>
> I approached the vehicle again and spoke with Gould. I advised him that there was an odor of marijuana emanating from his vehicle. Gould related that a friend was

allegedly in the vehicle with marijuana prior to our traffic stop, but he had just dropped him off. Gould continually stated he does not smoke marijuana. I asked Gould if he possessed a Pennsylvania Medical Marijuana Card, at which time he stated that he did not. I requested Gould to exit the vehicle to speak with me.

I requested consent to search the car from Gould. Gould denied consent to search the car. I explained the options for Gould, at which time he reaffirmed that he was denying consent. Gould stated he allegedly has a number to obtain a Medical Marijuana Card but does not possess one yet. He could not provide me proof of having the number as he explained. I requested a tow to our location at that time to tow the vehicle back to our barracks to apply for a search warrant.

Tpr. Archulet transported Gould off the next exit of PA 283 East. Hershey Auto responded to the scene and towed the vehicle back to the PSP Harrisburg barracks, located at 8000 Bretz Drive, West Hanover Township, Dauphin County.

Based upon the totality of circumstances described within this affidavit, your affiant believes that probable cause exists to conduct a search of the vehicle . . . .

Affidavit of Probable Cause at 1-2 (cleaned up).

The magisterial district court issued a search warrant for Gould's rental car. Upon execution of the warrant, the trooper discovered 19 bags of crack cocaine and drug paraphernalia in the car.[3] The police arrested Gould.

Five-and-a-half months after Gould's formal arraignment, he filed a facially untimely omnibus pretrial motion to suppress the Commonwealth's

---

[3] The warrant expressly authorized the seizure of controlled substances and related paraphernalia, among other things related to the sale of drugs. *See* Warrant, 4/18/23, Attachment A, ¶5.

- 5 -

evidence.[4]  Therein, Gould asserted (1) the trooper violated his constitutional rights by extending the traffic stop to conduct a drug investigation and (2) the magisterial district court erred by finding probable cause to issue the search warrant for Gould's rental car.  The suppression court conducted a hearing on the motion, and the trooper testified to the above facts.  The suppression court denied the motion to suppress.

Thereafter, a jury convicted and the court sentenced Gould as described above.  This timely appeal followed.

Gould raises two appellate issues:

> 1.    Did the suppression court err when it held that there was reasonable suspicion to extend the traffic stop?

---

[4] "Under Pennsylvania Rule of Criminal Procedure 578, unless otherwise required in the interests of justice, all pretrial requests, including a request for suppression of evidence, must be included in one omnibus pretrial motion. *See* Pa.R.Crim.P. 578, Comment.  Rule 579 states that an omnibus pre-trial motion must be filed within 30 days of arraignment." ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1248 (Pa. Super. 2011).  Typically, an untimely motion to suppress results in wavier of the issues therein.  ***See id.***

Gould's omnibus pretrial motion included a request for leave of court to file the untimely motion.  He contended that he did not receive all of the discovery necessary to file the motion to suppress until three months after his formal arraignment.  ***See*** Gould's Omnibus Pre-Trial Motion at 2.  Although the record contains no order or acknowledgment from the suppression court granting his request, the Commonwealth did not object to the untimeliness of the motion.  Nor did it rely upon the untimeliness of Gould's motion as a basis for the suppression court to deny suppression.  Moreover, the suppression court addressed Gould's motion on the merits.  ***See*** Suppression Court's Opinion and Order, 11/8/24.  Thus, we presume the Commonwealth has acquiesced to and the suppression court impliedly granted Gould's request for leave to file his untimely motion to suppress for the reasons that he stated therein.

- 6 -

> 2. Did the suppression court err in determining that there was probable cause for the issuance of a search warrant?

Gould's Brief at 4.

First, Gould contends that the suppression court erroneously ruled the trooper had reasonable suspicion to convert the failure-to-keep-right traffic stop into a drug-based-investigative detention. He argues that, because the smell of cannabis wafting from a vehicle is no longer, in and of itself, probable cause in Pennsylvania, that same smell, standing alone, cannot serve as the basis for reasonable suspicion. *See id.* at 15-17. Based on that premise, Gould contends that the trooper unreasonably extended the traffic stop to ask him if he had a Medical Marijuana Card. *See id.* at 19. He believes that the trooper had to write him a citation or warning when the trooper first returned to his patrol car, return his license and registration to him, and let him proceed upon his way to Lancaster. We disagree.

Initially, we observe Gould does not claim he is entitled to heightened protections under the Constitution of the Commonwealth of Pennsylvania.[5] Thus, we must treat the protections contained in our state charter as coextensive with those found in the federal constitution. As a result, this Court will apply federal constitutional law in conducting our review.

_____

[5] *See Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991) (holding that the Constitution of the Commonwealth of Pennsylvania may, in certain cases, provide a party with greater rights than Constitution of the United States and laying out the test to determine if those greater rights exist).

In his first issue, Gould challenges an act of law enforcement that occurred prior to securing a warrant. Where the challenged law-enforcement action occurred without a warrant, the suppression court's "determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." ***Ornelas v. United States***, 517 U.S. 690, 699 (1996). That said, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." ***Id.***

Under the Constitution of the United States, the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." ***Florida v. Jimeno***, 500 U.S. 248, 250, (1991) (citing ***Katz v. United States***, 389 U.S. 347 (1967), and ***Illinois v. Rodriguez***, 497 U.S. 177 (1990)).

If the trooper had seized Gould's person at the time he questioned Gould concerning the Medical Marijuana Card, the trooper's "conduct in doing so was constitutional only if [he] reasonably suspected [Gould] of wrongdoing." ***United States v. Mendenhall***, 446 U.S. 544, 552 (1980). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." ***Terry v. Ohio***, 392 U.S. 1, 19 n.16 (1968).

An investigatory detention occurs whenever "a reasonable person would have believed that he was not free to leave." *Commonwealth v. Livingstone*, A.3d 609, 619 (Pa. 2017) (quoting *Mendenhall*, 446 U.S. at 554).

Here, the trooper took Gould's license and registration from him to do a background check into Gould's criminal history. After doing so, the trooper returned to Gould's rental car, failed to return the license and registration, and began questioning him about the cannabis smell in the rental car. A reasonable person in Gould's position at the time that the trooper started to question him about the smell of cannabis would not believe he was free to leave, because the trooper had not returned the documentation needed to drive away. *See Livingstone*. Thus, Gould was "seized" for Fourth Amendment purposes, and the trooper's interrogation of him concerning the smell of cannabis "was constitutional only if [the trooper] reasonably suspected [Gould] of wrongdoing," under *Terry*. *Mendenhall*, 446 U.S. at 552.

The Supreme Court has held that a traffic "stop exceeding the time needed to handle the matter for which the stop was made violates the constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). An initially constitutional traffic stop may become unconstitutional if law enforcement "prolong[s it] beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 350–51.

Yet, "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention." *Id.* at 354. "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355.

Gould rightly contends that, after the trooper returned to his patrol vehicle, the trooper had sufficient time to issue Gould a ticket or warning for driving in the left-hand lane. Thus, the record indicates that, when the trooper returned to Gould's rental car and decided to start questioning him about the smell of cannabis in the car, the trooper deviated into a drug investigation that was unrelated to the purposes of the initial traffic stop. Hence, Gould is correct that the trooper extended the detention of Gould's person beyond the time necessary to complete the traffic stop. Nevertheless, like the suppression court, we conclude that the trooper's decision to extend the traffic stop to inquire into the smell of cannabis was based upon reasonable suspicion that other crimes may have been afoot.

"Reasonable suspicion, like probable cause, is an inherently fluid concept. It deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth v. Lewis*, 343 A.3d 1016, 1032 (Pa. 2025) (quoting *Ornelas*, *supra*) (citations and some punctations omitted). "As such, reasonable suspicion is not readily, or even usefully, reduced to a neat set of

legal rules." *Id.* In fact, the Supreme Court of the United States has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Florida v. Harris*, 568 U.S. 237, 244 (2013).

A trooper has reasonable suspicion if he possesses "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 589 U.S. 376, 380, (2020). While a mere hunch does not create reasonable suspicion, "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* "The reasonable suspicion inquiry 'falls considerably short' of 51% accuracy . . . ." *Id.* at 381. Courts "must permit officers to make commonsense judgments and inferences about human behavior." *Id.* at 380.

In this case, the trooper smelled the odor of cannabis emanating from inside Gould's rental car both times he approached it. The trooper also took the time to investigate Gould's criminal history and learned that he had a string of prior drug-trafficking convictions. Furthermore, the trooper knew from his experience and training that Gould was driving a car that did not belong to him on a main drug-trafficking route between Harrisburg and Lancaster. Additionally, the trooper knew that the state police had recently also ran Gould's plates on Interstate 71, near Bethlehem, Pennsylvania. That interstate, the trooper knew, was another major drug-trafficking route out of Harrisburg.

- 11 -

Based on this totality of the circumstances before him, the trooper could rationally suspect that Gould might well have been in the process of moving cannabis from Harrisburg to Lancaster. It was perfectly logical, based on the trooper's training, experience in the field of drug interdiction, and knowledge to convert the traffic stop into a drug-investigative detention. The trooper was within the bounds of the Fourth Amendment when he detained Gould for a few more seconds to ask him if he had a Medical Marijuana Card. Such an inquiry was perfectly legitimate police work, because the trooper knew that, if Gould had the requested card, he was required to carry the card with him. If Gould had a Medical Marijuana Card on him, the smell of cannabis would have had a legal explanation, thereby dispelling the trooper's suspicion of a potential ongoing crime.

But, absent such a card, the smell would have created probable cause that a crime of delivering or using cannabis was potentially in progress, because, without such a card, a person may not legally possess or consume cannabis in this Commonwealth. Cannabis remains a scheduled, controlled substance. *See* 35 P.S. § 780-104(1)(iv).

Thus, we hold that the trooper did not violate Gould's Fourth Amendment right to be free of unreasonable seizures of his person, when the trooper detained Gould for a few moments to ask him whether he had a Medical Marijuana Card. We dismiss Gould's first appellate issue as meritless.

As his second issue, Gould contends that, based on all the arguments that he asserted in his first appellate issue, "the issuance of a warrant for

probable cause faces the same analytical problems as the reasonable suspicion analysis." Gould's Brief at 22. If that were true, we would have reversed the order denying suppression based on Gould's first claim of error. Indeed, Gould's contention that the magisterial district court erroneously issued the search warrant fairs no better than his claim that the trooper lacked reasonable suspicion to extend the traffic stop.

Because the trooper obtained a search warrant prior to searching the rental car, our standard of review shifts to one of deference to the magisterial district court. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid **great deference** by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (emphasis added). "A grudging or negative attitude by reviewing courts toward warrants . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hyper technical, rather than a commonsense, manner." *Id.* (cleaned up). "If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search." *Id.*

Thus, because the trooper took the time to seek pre-search judicial authorization of his conduct, the federal constitution rewards his patience and

- 13 -

adherence to proper procedure. As a result, this Court does not review the underlying question (as Gould incorrectly frames it) of whether the trooper had probable cause to search his car. The Fourth Amendment committed that determination solely to the magisterial district court, when the trooper applied for the search warrant.

Instead, our "standard for review of an issuing magistrate's probable-cause determination [is whether] the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, [because] the Fourth Amendment requires no more." *Id.* (some punctuation omitted).

As mentioned, by the time the trooper towed Gould's rental car and petitioned the magisterial district court for a search warrant, Gould admitted that he did not have a Medical Marijuana Card. We hold that such knowledge by law enforcement, when coupled with the fact that police smell cannabis wafting from a suspect's vehicle, give the magisterial district court "a substantial basis for concluding that a search would uncover evidence of wrongdoing" inside the vehicle. *Id.* As we have explained above, a person who does not have a Medical Marijuana Card has no right to possess or use cannabis in this Commonwealth. Therefore, the holding in ***Commonwealth v. Barr***, 266 A.3d 25 (Pa. 2021) – *i.e.*, that the smell of cannabis alone is insufficient to form probable cause – has no bearing on this case. Gould's reliance upon ***Barr*** to attempt to undermine the magisterial district court's finding of probable cause is misplaced.

Because the odor of cannabis was emanating from Gould's vehicle with only one occupant, an occupant who conceded he had no right to possess cannabis, the magisterial district judge reasonably could have inferred that (1) there may have been cannabis in Gould's rental car and (2) the search would have uncovered it. Hence, the magisterial district court rationally could have believed that the search of Gould's rental car would uncover cannabis that Gould had no right to possess.

Thus, under the *Gates* Court's deferential standard of review for the magisterial district court's probable-cause determinations, the suppression court correctly rejected Gould's second argument in his motion to suppress.

We dismiss Gould's second appellate issue as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/10/2026

- 15 -